# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

Judith M. Krebsbach,

       Plaintiff,

vs.

The Travelers Pension Plan and
The Travelers Companies, Inc., as
Plan Administrator and Sponsor of
The Travelers Pension Plan,

       Defendants.

File No:

**COMPLAINT**

For her Complaint, Plaintiff Judith M. Krebsbach states and alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., and principles of federal common law developed thereunder.

2.      This Court has jurisdiction of this action pursuant to 29 U.S.C. §1132(e)(1), ERISA § 502(e)(1) and federal questions under 28 U.S.C. §1331.

3.      Venue is proper in this District under 29 U.S.C. §1132(e)(2), ERISA §502(e)(2), because Defendants may be found in this District.

## PARTIES

4.      Judith M. Krebsbach ("Krebsbach") is a resident of Osceola, Wisconsin.

5.     Krebsbach is a participant in The Travelers Pension Plan ("Plan") and is a participant in The St. Paul Companies, Inc. Employees Retirement Plan, which is now part of the Plan.

6.     Krebsbach started employment for The St. Paul Companies, Inc., on September 5, 1967, and through a series of mergers, she became and continues to be employed by The Travelers Companies, Inc. ("Travelers").

7.     The Plan is a qualified defined benefit plan under § 401(a) of the Internal Revenue Code.

8.     Travelers is the sponsor and administrator of the Plan for purposes of ERISA. Travelers acts as administrator through its Administrative Committee, which is responsible for the general management and administration of the Plan.

9.     The St. Paul Companies, Inc. Employees' Retirement Plan was originally adopted effective as of January 1, 1943. It has been amended and renamed from time to time and was most recently amended and restated effective January 1, 2016.

10.     The Plan was originally adopted on August 20, 2002, as a spin-off from the Citigroup Pension Plan.

11.     This Plan is the result of the consolidation of The St. Paul Companies, Inc. Employees' Retirement Plan and The Travelers Pension Plan at the close of December 31, 2004, with The St. Paul Companies, Inc. Employees' Retirement Plan being considered as the surviving plan for government filing and other applicable purposes. After the consolidation, the Plan was renamed "The St. Paul Travelers Pension Plan." As the result

of a corporate name change on February 27, 2007, the Plan was again renamed "The Travelers Pension Plan."

## RELEVANT PLAN PROVISIONS

12.     The Plan was amended and restated effective January 1, 2020.

13.     The Plan generally provides accruals under a Cash Balance Formula; however, certain Participants continue to accrue benefits under a Grandfathered Traditional Formula in accordance with the terms of an applicable Appendix.

14.     Active Legacy St. Paul Traditional Pension Participants participate and accrue benefits in the Traditional Pension Formula in accordance with Appendix A to the Plan.

15.     Appendix A provides that except as otherwise defined in Appendix A, capitalized terms have the same meaning as given to them in Article II of the Plan.

16.     Appendix A, Section A8, provides that section 5.10.3 of the main Plan (regarding continuation of employment after April 1 date) will govern over any conflicting provisions of Appendix A.

17.     Appendix A, Section A1.3. "Traditional Pension Formula" means the formula under this Appendix A to the Plan, or any comparable provision of The St. Paul Companies, Inc. Employees' Retirement Plan.

18.     Appendix A, Section A.3, defines the Legacy St. Paul Traditional Formula Pension Accrued Benefit as follows:

The Legacy St. Paul Traditional Pension Formula Accrued Benefit is a Single Life Annuity commencing on the Participant's Normal Retirement Date (or the first day of the month after the date of determination, if the date of determination is after the Participant's Normal Retirement Date), in a monthly amount equal to A + B, where:

A = The Participant's Accrued Benefit attributable to the Traditional Pension Formula calculated under The St. Paul Companies, Inc. Employees' Retirement Plan as of December 31, 2002, as if his/her Termination of Employment had occurred on that day (or on his/her actual Termination of Employment if prior to December 31, 2002);

**plus**

B = One percent (1%) of the Participant's Final Average Compensation multiplied by his/her Years of Credited Service on and after January 1, 2003.

The amount determined above will be reduced by any actuarial charges to provide elective survivor coverage in accordance with Section A.5.3.

19.    Appendix A, Section A.1.2 defines "Final Average Compensation" as one sixtieth (1/60th) of the aggregate amount of a Participant's Considered Compensation for the sixty (60) consecutive calendar month period during the Participant's last one-hundred twenty (120) consecutive calendar months of employment with the Company or a Participating Affiliate that produces the highest Final Average Compensation. If a Pension is being paid to an Active Participant following his/her Required Beginning Date, for purposes of determining the amount of such Pension payable during a Plan Year in which such Pension is being paid after such Participant's Required Beginning Date, the sixty (60)-consecutive-calendar-month period will end no later than the end of the Plan Year immediately prior to the Plan Year in which the Pension is being paid.

20.    Appendix A, Section A.1.4,  defines "Years of Credited Service" as the sum of:

> (a)    The Participant's Years of Credited Service determined under The St. Paul Companies, Inc. Employees' Retirement Plan as of December 31, 2002 (as if his/her Termination of Employment had occurred on December 31, 2002, or his/her actual date of Termination of  Employment, if earlier); and

> (b)    The Participant's Years of Credited Service for periods on and after January 1, 2003, determined as follows, applied as if the Participant was first credited with one Hour of Service on January 1, 2003.

21.    Section 2.1.1 of the Plan defines "Accrued Benefit" as the Pension that has accrued as of the date of determination and to which the Participant would be entitled if he/she then had a Termination of Employment (assuming full vesting), which may be either a Cash Balance Formula Accrued Benefit or Grandfathered Traditional Formula Accrued Benefit.

22.    Section 2.1.1 of the Plan states a "Grandfathered Traditional Formula Accrued Benefit" is the Pension attributable to a Grandfathered Traditional Formula, expressed as a Single Life Annuity starting on the Participant's Normal Retirement Date (or on the first day of the month after the date of determination, if the date of determination is after the Participant's Normal Retirement Date).

23.    Appendix A, Section A.4.2, provides that the Traditional Pension Formula calculates a Pension payable in the form of a Single Life Annuity commencing on the Participant's Normal Retirement Date (or the first day of the month after the date of determination, if the date of determination is after the Participant's Normal Retirement

Date). A Pension attributable to a Traditional Formula Accrued Benefit will be paid (or start to be paid) to the Participant in accordance with Sec. 5.2 of the Plan.

24.     Section 5.2.1 of the Plan states that the Grandfathered Traditional Formulas each calculate a Pension payable in the form of a Single Life Annuity commencing on the Participant's Normal Retirement Date (or the first day of the month after the date of determination, if the date of determination is after the Participant's Normal Retirement Date). These payments forms are referred to as the "Normal Form." However, the Pension will not necessarily be paid in the Normal Form, but instead will be paid as provided in Section 5.2 of the Plan.

25.     Section 5.2.4 of the Plan permits a Participant to elect an Optional Form of Payment and receive the Pension in a lump-sum payment.

26.     Section 5.2.5(b) of the Plan states that a Pension attributable to a Grandfathered Traditional Formula Accrued Benefit will have a value determined in accordance with the applicable Appendix.

27.     Appendix A, Section A.4.3(a) provides that the value of a Pension attributable to a Traditional Pension Formula Accrued Benefit for a single lump-sum payment will be in an amount equal to the greater of:

> (1)     The Actuarial Equivalent of the Participant's Traditional Pension Formula Accrued Benefit; or
>
> (2)     The Actuarial Equivalent of the Single Life Annuity that would be payable to the Participant as of the Benefit Commencement Date and that is attributable to the Traditional Pension Formula Accrued Benefit.

28.    Section 5.10.3 of the Plan provides that a Participant who continues as an Employee on or after the April 1st of the calendar year after the calendar year in which he/she attains age seventy and one-half (70½) and who elect not to start receiving a Pension as of such April 1st, the Pension as of any date of determination after such April 1st date will be determined as follows:

> …
>
> > (b)(1) <u>Adjustment to Grandfathered Traditional Formula Accrued Benefit</u>.  If the Participant has a Grandfathered Traditional Formula Accrued Benefit, as of any date of determination after such April 1$^{st,}$ such Grandfathered Traditional Formula Accrued Benefit will equal the greater of the following:
> >
> > (A) The Participant's Grandfather Traditional Formula Accrued Benefit   as of the date of determination, calculated without regard to this Sec. 5.10.3; or
> >
> > (B)    The Actuarial Equivalent as of the determination date of the Participant's Grandfathered Traditional Formula Accrued Benefit as of the last day of the prior Plan Year (calculated as if his/her Termination of Employment had occurred on such date).

29.    Section 2.1.2 of the Plan defines "Actuarial Equivalent" or "Actuarial Equivalence" as a benefit having the same value as the benefit which it replaces, determined using the assumptions or factors specified in the Plan, or if no assumptions or factors are specified, using the Applicable Interest Rate and Applicable Mortality Table. The "Applicable Interest Rate" is the interest rate (rounded to one-one hundredth of one percent (0.01%)) prescribed by the Internal Revenue Service for purposes of Code § 417(e), with the interest rate prescribed for August (the "look-back month") applying for any date

7

of determination during the next Plan Year (the "stability period"); and the "Applicable Mortality Table" is the mortality table prescribed by the Internal Revenue Service for purposes of Code § 417(e) (with each new table to be effective as of the earliest date set by the Internal Revenue Service).

30.     Section 5.10.4 of the Plan provides for a special interest rule for determination of Actuarial Equivalence. The Applicable Interest Rate for calculating the Actuarial Equivalent of an amount to be paid as of a later date than the original payment date (as provided in Article V) will be with respect to a Grandfathered Traditional Formula Accrued Benefit, the first segment rate prescribed by the Internal Revenue Service for purposes of determining lump-sum payments under Code § 417(e) (as of the "look-back month" otherwise applicable under the Plan) and in all other cases, the lesser of (a) the Interest Credit provided in section 4.4.2 or (b) first segment rate prescribed by the Internal Revenue Service for purposes of determining lump-sum payments under Code § 417(e) (as of the "look back month" otherwise applicable under the Plan).

31.     The Plan does not define "original payment date" as referred to in section 5.10.4.

32.     The Summary Plan Description as to the Traditional Pension Formula states only that the pension will be calculated under traditional average pay or other formulas and refers to the Appendices to the Plan.

33.     The Appendices to the Summary Plan Description states that if a participant whose pension benefit is determined under the Traditional Pension Formula does not start the pension as of April 1 of the calendar year following the calendar year the participant

reaches age 70½, when the participant does retire, the benefit will be the greater of that produced under the pension formula as of the participant's actual retirement, or the pension the participant would have received if the participant had retired on the last day of the prior year, actuarially increased for delayed commencement. The Appendices also states that the suspension of benefits after age 65 is made pursuant to Department of Labor Regulation 2530.203-3.

34.    The Summary Plan Description encourages participants to seek information and ask questions. It states that Travelers will not treat a communication as a formal claim for benefits unless either:

- You use the Plan's claim form; or
- Travelers notifies you in writing that it considers your communication to constitute a claim for benefits.

## KREBSBACH'S PENSION CLAIM

35.    Krebsbach achieved her Normal Retirement Age of 65 under the Plan on July 5, 2013, and her Normal Retirement Date was August 1, 2013. Krebsbach achieved her age 70½ date on January 5, 2019; therefore, her April 1 date under the Plan was April 1, 2020.

36.    On October 12, 2020, Krebsbach received two pension election packages from Travelers Pension Team, one with a Benefit Commencement Date of December 1, 2020, and another with a Benefit Commencement Date of January 1, 2021.

37.    On October 22, 2020, Krebsbach sent an email to the Travelers Pension Team questioning the calculation of her pension set forth in the election packages. She noted that the Summary Plan Description explained that she would be entitled to the greater

of a pension calculated based on her years of service past age 65 or the benefit measured as of Normal Retirement Date adjusted to current age.

38.    On October 27, 2020, the Pension Team responded that she was correct that she would receive the greater of those two calculations, and that the age 65 benefit adjusted to her current age is the larger benefit in the amount of $5,198.95.

39.    On October 29, 2020, Krebsbach sent an email to the Pension Team stating she did not believe the approach used to compute her benefit or service past age 65 is consistent with the SPD and requested a copy of the Plan document with reference to the relevant sections of the Plan which delineate how benefit is computed.

40.    On the same day, the Pension Team responded by forwarding a copy of the Plan and referring Krebsbach to Appendix A of the Plan. The response did not reference any specific sections of the Appendix.

41.    Due to the deadline Krebsbach was under to elect her pension, she did not have the opportunity to consider Plan provisions, decided to elect her pension to begin on December 1, 2020, and noted that she reserved the right to challenge her benefit computation.

42.    Krebsbach elected to receive a lump-sum distribution as an active employee on December 1, 2020 at age 72 years and 4 months in the amount of $745,950.45. The corresponding single life annuity value calculated by Travelers Pension Team was $5,198.95 per month.

43.     On February 14, 2021, Krebsbach sent an email to the Pension Team again requesting that she be provided with the specific plan provisions used in calculating her benefit.

44.     On February 22, 2021, the Pension Team responded to Krebsbach by stating that the comparison done for benefits after the Normal Retirement Date of age 65 applies to all plan participants, so the explanation occurs in the main body of the Plan and not in the Appendix, referencing section 5.10 of the Plan.

45.     On February 10, 2021, an email entitled "ACTION REQUIRED – Annual Increase in Pension Benefits" was sent by Travelers notifying Krebsbach that there would be no increase in her benefit due from the Plan in 2021. The email did not specify the effective date of the computation.

46.     On February 22, 2021, Krebsbach followed up and asked whether section 5.10.3(b)(1) applied.

47.     On February 23, 2021, the Pension Team responded to Krebsbach stating that, in calculating the pension benefit for Krebsbach, section 5.10.1(a) was the comparison that was used for her benefit, and that since she had taken payment, section 5.10.3(a) applied to her because she elected to take her pension on December 1, 2020.

48.     On February 23, 2021, Krebsbach followed up again stating she read the Plan to mean that the April 1 date referred to in section 5.10.3(b) is April 1, 2020, and since she elected her pension after that date, section 5.10.3(b) applies. She again requested an explanation as to why that section would not apply to her situation.

49.     On March 4, 2021, the Pension Team responded stating Krebsbach would always have a right to the most benefit available under the Plan. The Pension Team agreed that Krebsbach date of payment was past the section 5.10.3 date (4/1/2020) but she was also past the section 5.10.1 date (8/1/2013). The Pension Team stated her benefit was calculated under 5.10.1, but they could also look at section 5.10.3. The Pension Team stated that the section 5.10.1(a)(2) calculation was more favorable than the 5.10.3(b)(2) calculation.

50.     The Pension Team did not provide the comparison calculation of the 5.10.1(a)(2) calculation and 5.10.3(b)(2) calculation referred to in the March 4, 2021 response.

51.     On March 5, 2021, and March 10, 2021 Krebsbach sent emails stating her advisors pointed out that section 5.10.3(b)(1)(B) includes accrued benefit in each year following age 65 and pointing to support under the Internal Revenue Code ("IRC") and under ERISA. Krebsbach also requested the supporting computations for the Late Retirement Adjustment to Current Age and the Lump Sum Factor. On March 31, 2021, the Pension Team stated that her questions were being reviewed with management and legal counsel. Krebsbach was informed that her questions would need to be considered a claim and reviewed by the Administrative Committee.

52.     On April 14, 2021, Krebsbach submitted additional information in support of her claim. She again requested the information requested in her March 5, 2021, and March 10, 2021, emails regarding Travelers' computations.

53.     Krebsbach's claim consisted of two parts. Part 1 asserted that the method utilized by the Pension Team was not in accordance with the Plan and U.S. Code. Krebsbach stated that the Pension Team improperly handled the portion of the Traditional Formula amount representing her service past age 65 because it did not reflect all appropriate actuarial adjustments.

54.     Part 2 of Krebsbach's claim asserted that the Pension Team understated the lump-sum conversion factors. The claim included a summary of actuarial assumptions, methods and inputs that should be used to calculate the lump sum benefit as well as computations based on those factors.

55.     Krebsbach's claim also stated that her computations indicate that the January 1, 2021 payout date would have resulted in a higher lump-sum pension amount, and she would have elected that payout date had she been given correct information.

56.     On June 29, 2021, Travelers, as plan administrator, issued a decision on Krebsbach's claim stating it had calculated her benefit correctly. The decision stated that the Plan does not allow for increased benefits as asserted in the claim because the IRC only requires actuarial equivalence of the benefit accrued at age 65 and after 70.5, and that the Plan was written to follow the Code requirements.

57.     The June 29, 2021, decision letter ("Initial Denial Letter") states that the actuarial increase of the age 65 benefit and after 70.5 benefit are difficult calculations and that the Plan terms regarding actuarial equivalence were followed. The letter further stated that there is no employer discretion regarding actuarial equivalence.

58.    The Initial Denial Letter states that a benefit commencement date of December 1, 2020, provides a larger lump-sum benefit than delaying until January 1, 2021, and that the Plan terms were followed regarding conversion to a lump-sum payment form.

59.    The Initial Denial Letter states that Krebsbach's 2020 benefit calculation involved multiple steps and comparisons. The first step is to apply her age, service, and survivor coverage to a traditional pension formula. The second step is comparing the first step's single life annuity to her age 65 benefit, actuarially adjusted. The third step is to actuarially convert her single life annuity to the lump sum benefit.

60.    The Initial Denial Letter stated the following factors were used for the December 1, 2020 benefit commencement date: (a) the factor for the 100% pre-retirement survivor benefit coverage charge ("100% PRSB") 0.8247; (b) the factor for late retirement commencement, 1.6476; and (c) the factor for conversation from an annuity to a single lump sum, 143.480981.

61.    The Initial Denial Letter provided the basic computation used to calculate Krebsbach benefit and stated it followed section 5.10.1 of the Plan, except that the calculation assumed a December 31, 2019, termination of employment, which is language based on section 5.10.3.

62.    Section 5.10.1(a)(2) and section 5.10.3(b)(1)(B) do not use the same language to determine the Actuarial Equivalent of the benefit.

63.    The Initial Denial Letter states that the Plan does not allow late retirement factors to apply to benefits accrued at ages 66, 67, 68, 69, or 70, and that the accruals after

14

age 65 and before age 70 are not protected by the Code or the Plan the same as the benefit accruals are up to age 65, which are actuarially adjusted for late retirement.

64.     The Initial Denial Letter stated that the late retirement actuarial adjustment factors for the comparison to protect the normal retirement benefit under Plan 5.10.1 are the first segment rate under Code § 417(e) and the Code § 417(e) mortality table, citing to Plan sections 2.1.2 and 5.10.4.

65.     As to Part 2 of Krebsbach's claim, the Initial Denial Letter states that once the benefit was determined under section 5.10.1, then the annuity is adjusted for the lump-sum payment form, and that the actuarial equivalence adjustment to a lump-sum payment form for a St. Paul Traditional benefit is determined under Appendix A, section 4.1(a)(1).

66.     The Initial Denial Letter stated that the Actuarial Equivalent for the conversion to a lump sum uses the Applicable Interest Rate rounded to the one-one hundredth of one percent required by the IRS under Code § 417(e) for the August of the prior year and the Applicable Mortality Table required by the IRS under Code § 417(e), citing to Plan sections 2.1.2 and Code § 417(e). The applicable interest rates used by the Plan for the December 1, 2020 benefit commencement date were: 1st Segment: 2.09%; 2nd Segment: 3.00%; and 3rd Segment: 3.61%.

67.     The Initial Denial Letter stated there was a step 4, to protect Required Minimum Distribution Benefit, referring to section 5.10.3(a) of the Plan and IRC Code § 401(a)(9)(C)(iii). The Letter again commented that one of the key points of Krebsbach's claim is that she believes actuarial adjustments should be applied to benefit accrued after age 65, but stated that the Code does not *require* actuarial increases after age 65 except to

take into account any period after age 70½ in which the employee was not receiving any benefits under the Plan. The Initial Denial Letter did not point to Plan provisions that did not require actuarial adjustments between age 65 and 70½.

68.    On August 9, 2021, Krebsbach's attorney requested all relevant information related to the claim including detailed actuarial calculations and data relied upon by the Plan in calculating Krebsbach's benefit. Additional requests for information were made on August 30 and August 31, 2021. Travelers responded on September 10, 2021. Krebsbach's attorney sent another letter requesting information on September 21, and Travelers responded on November 11, 2021. Krebsbach's attorney sent another request on March 21, 2022. Travelers' attorney requested clarification of the requests. Krebsbach sent another request for information on April 4, 2022.

69.    On August 16, 2022, Diane Kurtzman, Executive Vice President and Chief Human Resources Officer, on behalf of the Administrative Committee responded to Krebsbach's May 4, 2022, letter which requested clarification of the Initial Denial Letter as to why Plan provisions sections 5.10.3(b) for late retirement and section 4.3(a)(2) of the Appendix do not apply to her claim. While stating that both sections 5.10.1 and 5.10.3 apply, Kurtzman admitted that section 5.10.3 was not applied, stating it would be to Krebsbach's disadvantage to use only section 5.10.3 because she would not get the Normal Retirement Benefit adjusted for actuarial equivalence.

70.    Kurtzman acknowledged that reference to Appendix A, section 4.1(a)(1), in the Initial Denial Letter was in error and should have instead referenced Appendix A, section 4.3.(a)(1).

71.     Kurtzman's August 16, 2022, letter responded to Krebsbach's request for the specific plan provision that is the basis for the calculations of service periods subsequent to the service period used for her initial lump-sum payment. Kurtzman stated that the relevant Plan provision is section 5.10.3(a), and that the provision is designed to satisfy the applicable legal requirements constituting a required minimum distribution benefit.

72.     On September 9, 2022, Krebsbach sent a letter to Kurtzman complaining that the Pension Team and Committee had not acted in an honest manner and requested clarification of terms used in the Initial Denial Letter.

73.     On September 19, 2022, Kurtzman responded to Krebsbach's September 9, 2022, letter. Instead of clarifying the terms in the Initial Denial Letter, Kurtzman responded that the Plan had received multiple favorable determination letters, each confirming that its terms meet the applicable legal requirements.

74.     Krebsbach submitted an appeal with supporting exhibits on October 22, 2022.

75.     Krebsbach's appeal was organized into several parts. The first part included the appeal form and definitions of capitalized terms used.

76.     The second part of the appeal was an Overview that included computations using correct methods as of January 1, 2021; comparison methods; summary of appeal amounts; coded denial letter statements; and key compliance areas.

77.     The third part of the appeal addressed Traveler's denial of Part 1 of claim regarding the understatement of post-April 1 single life annuity calculation. This part included authoritative support and summary of actuarial assumptions, methods, and inputs;

17

Article V of the Plan timeframes; section 5.10 computation comparison; and delayed commencement language comparison, and a diagram of Plan provisions pertinent to Krebsbach's single life annuity calculation.

78.    The fourth part of the appeal addressed Travelers' denial of Part 2 of Krebsbach's claim regarding the understatement of the lump-sum conversion amounts and included authoritative support and summary of actuarial assumptions, methods, and inputs.

79.    The fifth part of the appeal addressed Krebsbach's concerns that Travelers had breached its fiduciary duties owed to Krebsbach.

80.    The sixth part of the appeal was an Appendices of information referred to in the appeal.

81.    Krebsbach's appeal pointed out that as a result of information received from Travelers after Krebsbach's claim was filed, new issues arose within each of the two parts of the claim and based on that, the claim methodology and amounts were revised to reflect the information.

82.    As to the calculation of the single life annuity, the appeal explained that Krebsbach's calculation should have been based on section 5.10.3(b) of the Plan based on a plain reading of the Plan, and that the she was entitled to the actuarially adjusted value of her entire Traditional Formula Amount, including the portion representing her service past age 65.

83.    Krebsbach's appeal pointed out that for age 65 through the April 1 Date, the Plan and the IRC do not preclude actuarial increases to amounts earned during that period.

The appeal also argued that section 5.10.1(a) does not conform to IRC's "greater of" requirements.

84.    As to Part 2 of Krebsbach's claim, the appeal stated that the Plan is devoid of a sufficient procedural description to support the method for conversion to a lump sum. The appeal pointed out that the key difference between Travelers' method and Krebsbach's method involves the procedure by which the three segment interest rates interact with the stream of expected annuity payments.

85.    The appeal described the Travelers' method for conversion to lump sum as: The lump-sum value is equal to the sum of the following three amounts:

I.    The present value of Expected Annuity Payments for the first five years, discounted back to the determination date using the First Segment Interest Rate; plus

II.    The present value of Expected Annuity Payments for the next fifteen years, discounted back to the determination date using the Second Segment Interest Rate;

III.    The present value of Expected Annuity Payments after the first twenty years, discounted back to the determination date using the Third Segment Interest Rate.

86.    The appeal described Krebsbach's method for conversion to lump sum as the present value of Expected Annuity Payments as of the determination date, assuming that the First Segment Interest Rate is in effect for the first five years, the Second Segment Interest Rate is in effect for the next fifteen years, and the Third Segment Interest Rate is in effect for the years thereafter.

87.    The appeal explained that the Traveler's multiple interest rate approach is devoid of a sufficient procedural description and cited to IRS Revenue Ruling 79-90 which

states that whenever the amount of a benefit in a defined benefit plan is to be determined by some procedure which requires the use of actuarial assumptions, the assumptions to be used must be specified within the plan in a manner which precludes employer discretion.

88.    The appeal argued that the fact that both Travelers' method and Krebsbach's method for conversion to lump sum comply with the minimal actuarial specifications in the Plan is de facto proof that the Plan does not sufficiently describe the application of the Three Segment Interest Rates to the Expected Annuity Payments in the calculations of Actuarial Equivalence.

89.    The appeal pointed out that based on a review of the January 1, 2003 and December 31, 2004 official plan documents, the actuarial equivalency for determining pension payment to Legacy St. Paul participants was based on a single interest rate.

90.    The appeal outlined why Travelers had breached its fiduciary duties owed to Krebsbach. The breaches included that Travelers misapplied provisions of the Plan and U.S. Code, that Travelers' communications were misleading and not forthright, and that Travelers prioritized its own interests over Krebsbach's interests.

91.    On December 4, 2022, Krebsbach supplemented her appeal which included an expert report from Mitchell I. Serota, Fellow, Society of Actuaries; Member, American Academy of Actuaries.

92.    Mr. Serota stated he calculated the monthly benefit due Krebsbach for a January 1, 2021, Benefit Commencement Date. Using inputs that were not in dispute, he arrived at a monthly benefit of $5,581.86. He calculated the lump sum equivalent of $5,581.86 as of the Benefit Commencement Date to be $983,286. Mr. Serota used the

Special Interest Rule for Determination of Actuarial Equivalence in the case of late retirement benefits. He used the first segment rate of August 2020 (the "look-back month") and the Appicable Mortality Table for this period found in Internal Revenue Service Notice 2019-67. He used pension software known as ProVal which he states is common in the industry. ProVal generated an annuity factor for a participant aged 72 years and 5 months who is receiving an immeidate monthly annuity to be 14.679784, which provides a lump-sum value of $983,286.

93.    The only information in the record documenting the Administrative Committee's review of Krebsbach's appeal is  short memorandum from Matt Mammenga to Kurtzman dated January 31, 2023.

94.    The memorandum states that the Benefits Team recommends that Krebsbach's appeal be denied for the following reasons: 1) the Benefits Team requested Willis Towers Watson, Travelers' pension administration system provider to provide documentation of all actuarial factors used in both calculations and that deailed spreadsheets, which included all formulas and were disclosed to Krebsbach, matched the factors used in both benefit calculations performed by Travelers; 2) Aon, the Plan's actuary, completed an independent review of both Krebsbach's benefit calculations and found that all benefit calculations performed by Travelers conform to the Plan, Travelers' administrative practices and IRS requirements; and 3) the Plan has received favorable determination letters from the IRS numerous times over the years. The memorandum further stated that the recommendation was reviewed and approved by attorneys at Faegre Baker Daniels.

95.    On January 31 2023, Kurtzman, on behalf of the Administrative Committee issued a decision on appeal, upholding its decision that it should be denied.

96.    Kurtzman concluded that the Plan's terms are compliant with the law, those terms clearly provide for the actuarial equivalence factors that Travelers uses in its calculation of benefits, and the Administrative Committee has applied the Plan's terms consistently to calculate participants benefits.

97.    As to the calculation of the benefit for service after normal retirement age, Kurtzman states that Krebsbach's interpretation of section 5.10.3(b)(1)(B) requires a calculation year by year, and that the Plan's terms "clearly provide" for Travelers to make that calculation only at the time of the benefit commencement, not year by year.

98.    Kurtzman states that Krebsbach's position ignores the Plan language regarding normal retirement age in section 5.10.1 of the Plan, and that Krebsbach's request is inconsistent with both the text of the Plan's terms and how the Administrative Committee has adminstered the Plan pursuant to those terms.

99.    Kurtzman acknowledged that Krebsbach's proposed method represents one of multiple permissible plan designs, but states as Aon has confirmed, the Plan clearly does not provide for calculating the benefit under Krebsbach's method.

100.    Kurtzman states that the Plan provides for calculating Krebsbach's benefit in multiple steps over distinct time periods.

101.    Kurtzman states that the following language at the end of section 5.10.1 supports the use of 5.10.1:

> Starting with the April 1st of the calendar year after the calendar year in which the Participant attains age seventy and one-half (70½), Sec. 5.10.3 will apply to determine the Participant's Accrued Benefit.

102.    Kurtzman argues that if Travelers calculated Krebsbach's benefit by providing her with both an actuarial equivalence and additional accruals after Normal Retirement Date would render the "greater of" language in section 5.10.3(b) meaningless.

103.    Kurtzman argues that receipt of IRS Determination Letters confirm compliance of the Plan's delayed commencement terms. Kurtzman claimed that Travelers adopted the second amendment to the 2011 plan document, without identifying the language, to clarify delayed commencement, and that amendment was explicitly identified to the IRS for review in a determination letter submission.

104.    Kurtzman states that under the Plan's terms, Krebsbach's Benefit Commencement Date was December 1, 2020, and that once she completed the election for December 1, 2020 Benefit Commencement Date, her election is irrevocable.

105.    Regarding the conversion rate for the lump sum calculation, Kurtzman states the plan administrator determined that Krebsbach's and Krebsbach's actuary interpretation of the Plan terms is incorrect. Kurtzman states in reaching that decision, the plan administrator obtained opinions from Willis Towers Watson and Aon, and that both of the firms concluded, independently, that Krebsbach's and Krebsbach's actuary interpretation of the Plan's terms were incorrect.

106.    Kurtzman states that the Plan is clear that lump-sum conversions are based on the applicable interest rates and applicable mortality table under Code § 417(e), meaning the applicable interest rates are all three segment rates.

107.    Kurtzman states that the Plan uses different definitions of actuarial equivalence for different benefit calculations. She states there are different definitions of actuarial equivalence for determining the value of the pre-retirement survivor benfit, for determining the value of the annuity upon a delayed commencement, and for converting the value of the annuity payment to a lump-sum payment.

108.    Kurtzman states that section 5.10.4 applies only to determining the actuarial value of a participant's annuity benefit for delayed commencement and not for lump sum calculations.

109.    Kurtzman argued that Serota's calculation was incorrect because he used Krebsbach's interpretation of the Plan.

110.    Kurtzman included with her letter a letter and exhibit from Aon, Kurtzman's letter dated November 11, 2021, including Willis Towers Watson exhibits, 2018-2022 emails regarding notice of annual pension interest rates, and an email to Krebsbach dated November 8, 2018.

111.    On November 16, 2023, Krebsbach's current attorney requested all relevant information relating to Krebsbach's claim that had not previously been provided. The letter identified information which had been referenced in Travelers' Initial Denial Letter and the appeal denial letter.

24

112.    The November 16, 2023, letter requested communications and documents exchanged between Aon and Travelers, Administrative Committee, and any other entity or individual; communications and documents exchanged between legal counsel and Travelers, Administrative Committee, and any other entity or individual; and communications and documents exchanged between Willis Towers and Travelers, Administrative Committee, and any other entity or individual, and any other internal or external communications relating to Krebsbach's claim.

113.    The November 16, 2023 letter requested several other documents and information referenced in Travelers' letters.

114.    On December 21, 2023, Travelers' counsel sent what was claimed to be the complete Administrative Record and provided an index of the documents and identified the new documents provided.

115.    The only new documents provided by counsel were the Appeal Memorandum from Matt Mammenga, January 1 2023 benefit calculations, and the index of the record. Counsel did not provide any response to documents and information identified in the request and which were generated, considered, or relied upon by Travelers in its decision making and reviews.

116.    Travelers' counsel stated that the record provided was all the documents Krebsbach was entitled to receive under ERISA regulations.

117.    The record produced by Travelers' counsel omits many documents that were exchanged between the parties.

118.    Krebsbach has exhausted her administrative remedies.

## CLAIM FOR BENEFITS DUE

119.    Plaintiff restates and realleges the allegations in the foregoing paragraphs.

120.    ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), authorizes Plaintiff to bring action to enforce her rights under the terms of the Plan.

121.    Travelers misconstrues the terms of the Plan by applying section 5.10.1(a)(1) of the Plan instead of Appendix A and section 5.10.3(b)(1). Section 5.10(a)(1), by its terms, applies only to a calculation as of any date of determination after the participant's Normal Retirement Age and *prior to* April 1st of the calendar year after the calendar year in which he/she attains age 70½.

122.    The phrase "date of determination" is not a defined term in the Plan but is used numerous times throughout the Plan. For purposes of Krebsbach's benefit payment on December 1, 2020, the Plan indicates the date of determination is the end of the month prior to the date chosen for her benefits to commence.

123.    Travelers calculated Krebsbach's single life annuity in a manner that was not supported by Plan terms. In doing so, Travelers had to assume more than one date of determination.

124.    Travelers ignored the provision in Appendix A which states that section 5.10.3 would apply over any conflicting provision in Appendix A.

125.    Travelers' computations of the Krebsbach's Accrued Benefit were based on the Traditional Formula amounts as of Normal Retirement Date and "last day of the prior Plan Year," not "as of the date of determination" as required by section 5.10.3(b)(1)(B) of the Plan.

126. Instead of interpreting section 5.10.3(b)(1)(B) to comply with the law, Travelers states it used section 5.10.1 instead of section 5.10.3(b)(1)(B) because section 5.10.3(b)(1)(B) did not provide for actuarial increases from the Normal Retirement Date. A reasonable reading of section 5.10.3(b)(1)(B) would be to provide for the actuarial increases from the Normal Retirement Date to comply with the law plus give import to the language that the actuarial equivalent is as of the determination date by including the benefit accruals up to that date.

127. The Appendices to the Summary Plan Description further demonstrates that Travelers' interpretation of the Plan is unreasonable and that Krebsbach's interpretation is correct. The Appendices to the Summary Plan Description provides that Krebsbach's pension benefit is determined as if she had retired on the last day of the prior year and then actuarially increased for delayed commencement. Delayed commencement can only mean from the age of 65 based on the language of the Plan as a whole and the requirements under the law.

128. Travelers' position that the Plan does not allow late retirement factors to apply to benefits accrued at ages 66, 67, 68, 69, or 70 is not correct.

129. Travelers used discretion in computing the actuarial equivalence of Krebsbach's benefit in violation of the Plan and the Code.

130. Travelers' multiple interest rate approach is devoid of a sufficient procedural description required by IRS Revenue Ruling 79-90 which impermissibly allowed Travelers' to use a method which was less favorable to Krebsbach.

131.    Travelers failed to provide prompt and meaningful explanation and support for its calculations, requiring numerous requests for information.

132.    Travelers failed to consider Krebsbach's appeal arguments and evidence as required by ERISA regulations. The appeal memorandum contains virtually no analysis of Krebsbach's extensive appeal arguments and evidence.

133.    Travelers' incorrect benefit calculations have caused Krebsbach's benefit calculation for the years 2020-2023 to also be incorrect.

134.    By reason of the foregoing, Plaintiff is entitled to judgment against Defendants enforcing her rights under the Plan, IRC, and ERISA, clarifying service assumptions and methodology that should have been used to calculate her pension benefits, and reasonable attorney's fees and costs as permitted under ERISA.

## BREACHES OF FIDUCIARY DUTY

135.    Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

136.    Travelers is a fiduciary and was required to process Krebsbach's claim in a fair and neutral manner.

137.    Plaintiff brings this claim for equitable relief under 29 U.S.C. § 1132(a)(3) due to Defendants' breaches of fiduciary duty owed to Plaintiff.

138.    Travelers took advantage of the Plan's lack of sufficient detail, lack of clarity, and lack of procedures to calculate the lump sum equivalent and calculated Krebsbach's benefit in a manner that was less favorable to her. An ERISA plan must be "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a).

139.    Travelers' failure to provide Krebsbach with prompt, complete, and accurate information before she elected her benefit caused her to select a benefit commencement date that was less favorable to her.

140.    Plaintiff seeks to be made whole by recovering her lost pension benefits due to Defendants' self-interested actions in picking and choosing different parts of the Plan to provide a less favorable benefit to Krebsbach and due to misrepresenting and failing to disclose relevant information that led Krebsbach to choose the December 1, 2020, benefit commencement date,  under the equitable theory of surcharge for the harm caused to her by Defendants' breaches of fiduciary duty.

141.    Alternatively, Plaintiff seeks reformation of the Plan in accordance with her reasonable benefit calculation methodology and plan interpretation.

142.    That as a direct and proximate result of Defendants' action, Krebsbach has been forced to incur costs and attorneys' fees.

WHEREFORE, Plaintiff requests judgment against the Defendants granting her the following relief:

(1)    Ordering that Plaintiff's interpretation of the Plan is correct and reasonable under the terms of the Plan and law.

(2)    Ordering Defendants to recalculate Krebsbach's benefit in accordance with Plaintiff's interpretation of the Plan and the law.

(3)    Ordering Defendants to pay Krebsbach the underpayment of her pension payments.

(4)    Ordering that Krebsbach is entitled to equitable relief for Defendants'
numerous breaches of fiduciary duties in the form of make whole relief,
including attorneys' fees and other costs caused by Defendants' breaches, or
alternatively to reform the Plan in accordance with Krebsbach's
interpretation of the Plan and require Defendants to recalculate Krebsbach's
benefit.

(5)    Ordering the Defendants to pay Plaintiff's costs and attorneys' fees incurred
in bringing this action.

(6)    Awarding Plaintiff pre-judgment interest.

(7)    Granting Plaintiff such other and further relief as the Court may deem just
and equitable.

Dated:   01/31/2024            **NOLAN, THOMPSON, LEIGHTON**
                               **& TATARYN, PLC**

                               By   /s/ *Denise Y. Tataryn*
                               Denise Y. Tataryn (#179127)
                               1011 1ˢᵗ Street South, Suite 410
                               Hopkins, MN  55343
                               Phone: 952-405-7171
                               Fax:     952-224-0647
                               Email:  dtataryn@nmtlaw.com

                               *Attorney for Plaintiff*